**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Bou JABBOUR, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civ. A. No. 1:22-cv-00451-APM |
| | ) |
| Antony J. BLINKEN, Secretary of the Department of State, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION OR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... i

INTRODUCTION ................................................................................................................... 1

STATUTORY AUTHORITY AND BACKGROUND.............................................................. 2

    A.  Plaintiffs' Assigned Posts ............................................................................................ 3

        1.  U.S. Embassy in Abu Dhabi ............................................................................... 3

        2.  U.S. Consulate in Almaty ................................................................................... 4

        3.  U.S. Embassy in Ankara ..................................................................................... 4

        4.  U.S. Embassy in Cairo ....................................................................................... 5

        5.  U.S. Embassy in Tirana ...................................................................................... 5

        6.  U.S. Embassy in Warsaw .................................................................................... 5

LEGAL STANDARD ............................................................................................................. 6

    A.  Motions for a Preliminary Injunction ........................................................................ 6

    B.  Motions for Summary Judgment ................................................................................ 7

ARGUMENT ......................................................................................................................... 7

    A.  Plaintiffs have not Demonstrated a Likelihood of Success on the Merits of their Claims, and their Motion for Summary Judgment should be Denied ............................................. 7

        1.  Fifty-nine Plaintiffs' claims are moot ...................................................................... 13

        2.  The Department does not have a mandatory non-discretionary duty to adjudicate Plaintiffs' visa cases within a time certain............................................................... 14

        3.  Plaintiffs' unreasonable delay claim fails to state a claim because the *TRAC* factors favor Defendants ........................................................................................ 17

            i.  *TRAC* Factors 1 and 2 ............................................................................. 20

            ii.  *TRAC* Factor 4............................................................................................ 27

            iii.  *TRAC* Factors 3 and 5 ................................................................................. 29

iv. *TRAC* Factor 6......................................................................................29

B.   Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm because Plaintiffs are not Guaranteed a Visa or an Interview Appointment to make a Visa Application ........................................................................................................30

C.   The Balance of Harms and the Public Interest Weigh against Preliminary Relief because Pushing Plaintiffs' Cases to the Front of the Line would Displace other Noncitizens seeking a Visa and would Impermissibly Interfere with the Department's and U.S. Diplomatic Missions' Authority to Allocate Consular Services ....................................31

CONCLUSION..........................................................................................................33

# TABLE OF AUTHORITES

## CASES

*Almendarez-Torres v. United States*,
    523 U.S. 224 (1998)................................................................................................ 9

*Am. Bioscience, Inc. v. Thompson*,
    269 F.3d 1077 (D.C. Cir. 2001) ............................................................................ 7

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*,
    331 U.S. 519 (1947)................................................................................................ 9

*Biden v. Texas*,
    142 S.Ct. 2528 (2022)........................................................................................... 27

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 30

*Crow Creek Sioux Tribe v. Brownlee*,
    331 F.3d 912 (D.C. Cir. 2003) .............................................................................. 8

*Cutler v. Hayes*,
    818 F.2d 879 (D.C. Cir. 1987) ............................................................................ 25

*De Avilia v. Civiletti*,
    643 F.2d 471 (7th Cir. 1981) .......................................................................... 12, 16

*De Los Santos v. INS*,
    690 F.2d 56 (2d Cir. 1982)................................................................................... 16

*Deppenbrook v. PBGC*,
    778 F.3d 166 (D.C. Cir. 2015) .............................................................................. 7

*Diop v. ICE*,
    656 F.3d 221 (3rd Cir. 2011) .............................................................................. 20

*E.B. v. Dep't of State*,
    422 F. Supp. 3d 81 (D.D.C. 2019) ...................................................................... 30

*FCC v. NextWave Personal Commc'ns, Inc.*,
    537 U.S. 293 (2003)............................................................................................. 26

*Feng Wang v. Blinken*,
    3 F.4th 479 (D.C. Cir. 2021) ................................................................................. 8

*Filazapovich v. Dep't of State*,
    560 F. Supp. 3d 203 (D.D.C. 2021) ......................................................13

*Forest Guardians v. Babbitt*,
    174 F.3d 1178 (10th Cir. 1999) ........................................................ 14

*FTC v. Tarriff*,
    584 F.3d 1088 (D.C. Cir. 2009) ........................................................ 23

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ........................................................................ 13

*Gjoci v. Dep't of State*,
    1:21-cv-0294-RCL, 2021 WL 3912143 (D.D.C. Sept. 1, 2021) ...................... 11, 19

*Gomez v. Trump*,
    485 F. Supp. 3d 145 (D.D.C. 2020) ........................................... *passim*

*Gorgadze v. Blinken*,
    No.  21-2421-JDB, 2021 WL 4462659 (D.D.C. Sept. 29, 2021).....................14, 28

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,
    639 F.3d 1078 (D.C. Cir. 2011) ........................................................ 6

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    920 F.3d 1 (D.C. Cir. 2019) ........................................................... 6

*Gulf Oil Corp. v. Dep't of Energy*,
    514 F. Supp. 1019 (D.D.C. 1981) ..................................................... 30

*Heckler v. Day*,
    467 U.S. 104 (1984)..................................................................... 25

*In re Barr Labs., Inc.*,
    930 F.2d 72 (1991)................................................................. 20, 28

*In re Bluewater Network*,
    234 F.3d 1305 (D.C. Cir. 2000) .................................................. 13, 22

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) ................................................... 14, 22

*In re People's Mojahedin Org. of Iran*,
    680 F.3d 832 (D.C. Cir. 2012)................................................... 20, 25

*INS v. Aguirre-Aguirre*,
    526 U.S. 415 (1999)..................................................................... 8

ii

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972)..................................................................................... 14

*Legal Assistance for Vietnamese Asylum Seekers v. Dep*'t of State,
  104 F.3d 1349 (D.C. Cir. 1997) .................................................................. 12

*Liberty Fund v. Chao*,
  394 F. Supp. 2d 105 (D.D.C. 2005) ...................................................... 27, 29

*Lincoln v. Vigil*,
  508 U.S. 190 (1993)......................................................................................24

*Liu v. Blinken*,
  544 F. Supp. 3d 1 (D.D.C. 2021) ............................................................... 28

*Loma Linda Univ. Med. Ctr. v. Sebelius*,
  684 F. Supp. 2d 42 (D.D.C. 2010) ............................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................................... 13

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
  336 F.3d 1094 (D.C. Cir. 2003) ...................................................... 20, 21 27

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)..................................................................................... 24

*Mathews v. Diaz*,
  426 U.S. 67 (1976)....................................................................................... 19

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)....................................................................................... 6

*Mexichem Specialty Resins, Inc. v. EPA*,
  787 F.3d 544 (D.C. Cir. 2015) .................................................................... 30

*Milligan v. Pompeo*,
  502 F. Supp. 3d 302 (D.D.C. 2020) ........................................................... 26

*Mohammad v. Blinken*,
  548 F. Supp. 3d 159 (D.D.C. 2021) ........................................................... 29

*Munaf v. Geren*,
  553 U.S. 674 (2008)....................................................................................... 6

*Murway v. Blinken*,
   No. 21-cv-1618-RJL, 2022 WL 493082 (D.D.C. Feb. 16, 2022)............................................ 28

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
   413 U.S. 405 (1973)............................................................................................................ 16

*Nat'l Cong. of Hisp. Am. Citizens v. Marshall*,
   626 F.2d 882 (D.C. Cir. 1979).......................................................................................... 13, 17

*Nazareno v. Att'y Gen.*,
   512 F.2d 936 (1975)............................................................................................................ 16

*Nishihata v. Blinken*,
   No. 1:21-cv-2173-CKK, 2021 WL 4476750 (D.D.C. Sept. 30, 2021).................................. 11

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004).............................................................................................................. 14

*Preston v. Kentucky Consular Ctr.*,
   No. 6:22-0015, 2022 WL 3593052 (E.D. Ky. Aug. 22, 2022) ......................................... 9, 11

*Pub. Citizen Health Rsch. Grp. v. Auchter*,
   702 F.2d 1150 (D.C. Cir. 1983).......................................................................................... 24

*Pushkar v. Blinken*,
   No. 1:21-cv-2297-CKK, 2021 WL 4318116 (D.D.C. Sept. 23, 2021)........................... *passim*

*Quern v. Mandley*,
   436 U.S. 725 (1978)............................................................................................................ 16

*Rai v. Biden*,
   567 F. Supp. 3d 180 (D.D.C. 2021) ......................................................................... 2, 10, 15, 24

*Broadcasting Co. v. FCC*,
   395 U.S. 367 (1969)............................................................................................................ 16

*Sarlak v. Pompeo*,
   No. 20-cv-0035-BAH, 2020 WL 3082018 (D.D.C. June 10, 2020)....................................... 28

*Shahi v. Dep't of State*,
   33 F.4th 927 (7th Cir. 2022) ............................................................................................ *passim*

*Sierra Club v. Gorsuch*,
   715 F.2d 653 (D.C. Cir. 1983)............................................................................................ 24

*Sierra Club v. Thomas,*
    828 F.2d 783 (D.C. Cir. 1987) ............................................................. 24

*Singh v. Carter,*
    185 F. Supp. 3d 11 (D.D.C. 2016) ........................................................ 30

*Skalka v. Kelly,*
    246 F. Supp. 3d 147 (D.D.C. 2017) .......................................... 11, 14, 24

*Sopo v. U.S. Att'y Gen.,*
    825 F.3d 1199 (11th Cir. 2016) ............................................................ 20

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................................. 8

*Tate v. Pompeo,*
    513 F. Supp. 3d 148 (D.D.C. 2021) ................................................. 21, 28

*Telecomms. Rsch. & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ...................................... 19-20, 24, 29

*Unemployment Compensation Comm'n v. Aragon,*
    329 U.S. 143 (1946) .............................................................................. 16

*United African Org. v. Biden,*
    No. 1:22-cv-02599, 2022 WL 3212370 (N.D. Ill. Aug. 9, 2022) ......... 7-8

*United States v. Wilson,*
    29 F.3d 347 (D.C. Cir. 2002) ............................................................... 15

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 543 (1978) .............................................................................. 19

*Visinscaia v. Beers,*
    4 F. Supp. 3d 126 (D.D.C. 2013) ............................................................ 7

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) .......................................................................... 30, 31

*Whitman v. Am. Trucking Assns., Inc.,*
    531 U.S. 468 (2001) .............................................................................. 15

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................... 6, 30, 31

*Yanjia Zeng v. Mayorkas*,
  No. 21-cv-0446-DLF, 2021 WL 2389433 (D.D.C. Apr. 16, 2021) .......................................... 26

*Zarei v. Blinken*,
  No. 1:21-cv-02102-CJN, 2021 WL 9146060 (D.D.C. Sept. 30, 2021) ............................. *passim*

## STATUTES

5 U.S.C. § 706(1) ............................................................................................................... 11

8 U.S.C. § 1104 ...................................................................................................... 12, 16, 18

8 U.S.C. § 1104(a) ................................................................................................................ 9

8 U.S.C. § 1151 ............................................................................................................ 12, 22

8 U.S.C. § 1151(a)(3) ......................................................................................................... 16

8 U.S.C. § 1151(e) ..............................................................................................................16

8 U.S.C. § 1152 ...................................................................................................................22

8 U.S.C. § 1153 ..............................................................................................................12, 22

8 U.S.C. § 1153(e)(2) ......................................................................................................... 22

8 U.S.C. § 1153(f) .............................................................................................................. 23

8 U.S.C. § 1154(a)(1)(I)(ii)(II) ...................................................................................... *passim*

8 U.S.C. § 1189(a)(4)(B)(iv)(I) .......................................................................................... 25

8 U.S.C. § 1201 .................................................................................................................. 16

8 U.S.C. § 1201(a)(1) ......................................................................................................... 23

8 U.S.C. § 1202 .................................................................................................................. 16

8 U.S.C. § 1202(a) .............................................................................................................. 15

8 U.S.C. § 1202(b) .......................................................................................................... 9, 15

8 U.S.C. § 1447(b) .............................................................................................................. 25

8 U.S.C. § 1571(b) ..............................................................................................................26

22 U.S.C. § 2561a(a)(1) ...................................................................................................... 11

vi

22 U.S.C. § 3927 ............................................................................................. 11, 16, 18

## REGULATIONS

8 C.F.R. § 42.51(b) ................................................................................................ 23

22 C.F.R. § 40.1(l)(2) ............................................................................................. 15

22 C.F.R. § 42.33(g) .............................................................................................. 23

22 C.F.R. § 42.51(a) ...............................................................................................22

## ACTS OF CONGRESS

National Defense Authorization Act,
   Pub. L. No. 110-181, 122 Stat. 395 (Jan. 28, 2008) ...................................26

Omnibus Appropriations Act,
   Pub. L. No. 111-8, 123 Stat. 807 (Mar. 11, 2009) ...................................26

## RULES

Fed. R. Civ. P. 56 ...................................................................................................7

## LEGISLATIVE MATERIALS

H. Rept. 101-723 pt. 1 (1990) ................................................................................10

## ADMINISTRATIVE DECISIONS

*Documentation of Immigrants Under the Immigration and Nationality Act,*
*As Amended: Electronic Petition for Diversity Immigrant Status,*
   68 Fed. Reg. 49353 (Aug. 18, 2003) ........................................................23

## OTHER AUTHORITIES

   https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-
backlog.html (last accessed on Sept. 14, 2022) ...........................................32

# INTRODUCTION

The Court should deny Plaintiffs' motion for a preliminary injunction or summary judgment in the alternative. The theory underlying Plaintiffs' case is that the U.S. Department of State ("Department") has purportedly deprioritized the Fiscal Year ("FY") 2022 ("FY 2022") diversity visa ("DV") program, and, thus, has purportedly unlawfully withheld and unreasonably delayed the adjudication of Plaintiffs' DV cases. The facts say otherwise—the Department has scheduled 34,054 FY2022 DV cases (associated with a total of 70,872 selectee principal applicants and their derivative applicants) for appointments for an interview to make a visa application worldwide, which is more DV applicants than there are available visa numbers under the statutory cap. As a result, Plaintiffs' amended complaint, preliminary injunction request, and motion for summary judgment are all without merit.

Plaintiffs, 71 FY 2022 DV selectees, move for a preliminary injunction and summary judgment based on only two of their original five claims. *Compare* Pls.' Mem. in Support of Pls.' Mot. for a Prelim. Inj. or Summ. J. in the Alternative ("Pls.' Mem.") ECF No. 19, *with* Pls.' Amended Complaint ("Am. Compl."), ECF No. 5. These two claims allege that Defendants have (1) unlawfully withheld and (2) unreasonably delayed issuance of DVs to Plaintiffs. *See* Pls.' Mem. at 8–16. Fifty-nine of the seventy-one Plaintiffs have received adjudications and thus have moot claims. But even considering the remaining 12 Plaintiffs,[1] it is clear that the Department has not unlawfully withheld or unreasonably delayed the adjudication of the remaining Plaintiffs' visa cases. Plaintiffs' theory relies on a misinterpretation of the Immigration and Nationality Act ("INA"), namely, that Congress mandated that the Department schedule every DV selectee who

---

[1]     On September 14, 2022, the Kentucky Consular Center ("KCC") scheduled Plaintiff Almaz Gazin (2022EU00022462) for an appointment for an interview at the U.S. Embassy in Santo Domingo. *See* Decl. of Morgan Miles ¶ 8 (Sept. 14, 2022) (attached hereto as Ex. A).

initiates a visa case for an appointment and use all available visa numbers for the DV program before the close of the fiscal year. The INA, however, includes no such mandate. *See Shahi v. Dep't of State*, 33 F.4th 927, 929 (7th Cir. 2022) ("[Plaintiffs'] problem is that this statute . . . does not set a time limit for administrative action. Indeed, it does not impose any duty on the State Department."); *Rai v. Biden*, 567 F. Supp. 3d 180, 195 (D.D.C. 2021) ("To be clear, there is no statutory requirement that every available diversity visa be issued each year."); *Pushkar v. Blinken*, No. 1:21-cv-2297-CKK, 2021 WL 4318116, at *10 (D.D.C. Sept. 23, 2021) ("Plaintiff cites no authority supporting her contention that Defendants have a non-discretionary, mandatory duty to schedule *her* consular interview within a particular timeframe to allow her visa to be fully processed by the fiscal year deadline.") (emphasis in original).

Accordingly, Plaintiffs cannot demonstrate that they are likely to succeed on the merits or entitled to a judgment as a matter of law and, thus, this Court should deny Plaintiffs' motion for a preliminary injunction because Plaintiffs fail to demonstrate that they will be irreparably harmed or that the public interest favors them.

## STATUTORY AUTHORITY AND BACKGROUND

Defendants incorporate by reference the Statutory Authority and Background sections from their Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem."), ECF No. 11-1, at pages 13–25.[2]

---

[2]  References to previous docket entries herein cite to ECF page numbers rather than the internal pagination of docket entries.

### A.  Plaintiffs' Assigned Posts

#### 1.  U.S. Embassy in Abu Dhabi

Plaintiffs Ayman Mohamed, case number 2022AS00030330, and Nilgun Serra Ozdemir, case number 2022EU00012895, are assigned to the U.S. Embassy in Abu Dhabi ("Abu Dhabi"). *See* Miles Decl. ¶ 10.  Abu Dhabi is one of the processing posts for citizens and residents of Iran. *See* 9 FAM 504.4-8(E). In addition, as a result of the suspension of operations at the U.S. Embassy in Kabul, Abu Dhabi has handled a significant demand for consular services to assist U.S. citizens and a demand to assist Afghans who the United States evacuated from Afghanistan. *See* Decl. of Brian McInerney, ¶ 26 (Aug. 25, 2022) (attached hereto as Ex. B); *see*, *e.g.*, Dep't of State, *Gratitude to the UAE for Facilitating the Transit of U.S. Citizens, Embassy Personnel, and Others from Afghanistan*. Lastly, the Department directed that Abu Dhabi prioritize immigrant visas for health care workers to facilitate the response to the COVID-19 pandemic in the United States. *See* McInerney Decl. ¶ 23. As of September 5, 2022, the Kentucky Consular Center ("KCC") has scheduled for interview 334 FY2022 DV cases associated with 728 prospective applicants at Abu Dhabi.  *See* Miles Decl. ¶ 9. As of August 31, 2022, Abu Dhabi has a backlog of 3,170 immediate relative, 1,825 family preference, and 927 employment-based immigrant visas. *See* Decl. of Rebecca Austin, Attach. 1, at 4 (Sept. 6, 2022) (attached hereto as Ex. C). All DV cases scheduled at Abu Dhabi have an earlier AV progress stage date than Plaintiffs Mohamed and Ozdemir, *see* Miles Decl. ¶ 10,[3] who are numbers 836 and 349, respectively, out of 892 in the DV queue for Abu Dhabi. *See id.*, Attach. 1.

---

[3]    The AV progress stage date is the date after which the Visa Office reported that it allocated a visa number to a selectee and their derivative(s) to KCC, and KCC then transitioned the case to the AV status in the Diversity Visa Information System ("DVIS"). *See* Miles. Decl. ¶ 10.

### 2.   U.S. Consulate in Almaty

Plaintiff Okhirnazar Alinazarov, case number 2022EU00017688, is assigned to the U.S. Consulate in Almaty ("Almaty"). *See* Miles Decl. ¶ 12. As of September 5, 2022, the KCC has scheduled for interview 545 FY2022 DV cases associated with 1,487 prospective applicants at Almaty, *see id.* ¶ 11. All DV cases scheduled at Almaty have an earlier AV progress stage date than Plaintiff Alinazarov, *see* Miles Decl. ¶ 12, who is number 288 out of 607 in the DV queue for Almaty. *See id.* Attach. 1.

### 3.   U.S. Embassy in Ankara

Plaintiff Ebru Donat, case number 2022EU00024638, is assigned to the U.S. Embassy in Ankara ("Ankara"). *See* Miles Decl. ¶ 14. As of September 5, 2022, the KCC has scheduled for interview 1,284 FY2022 DV cases associated with 2,469 prospective applicants for Ankara, *see id.* ¶ 13. As of August 31, 2022, Ankara has a backlog of 1,701 immediate relative, 1,604 family preference, and 435 employment-based immigrant visas. *See* Austin Decl., Attach. 1, at 3. All DV cases scheduled at Ankara have an earlier AV process stage date than Plaintiff Donat, with two exceptions. *See* Miles Decl. ¶ 14. For the first selectee with a later AV progress stage date, KCC had scheduled the selectee for an appointment, after which the selectee requested to adjust status and then later requested to attend his interview scheduled at Ankara, which caused his AV progress stage date to be reset in DVIS. For the second selectee, who had adjusted status in the United States, the selectee requested that Ankara schedule his derivate spouse for an interview, which caused his AV progress stage date to be reset in DVIS. *Id.* Plaintiff Donat is number 1047 out of 1157 in the DV queue for Ankara. *See id.* Attach. 1.

### 4.   U.S. Embassy in Cairo

Plaintiffs Ishak Temsah, case number 2022AF00018541, and Nabila Elassal, case number 2022AF00028335, are assigned to the U.S. Embassy in Cairo ("Cairo"). *See* Miles Decl. ¶ 16. As of September 5, 2022, the KCC has scheduled for interviews 705 FY2022 DV cases associated with 1,779 prospective applicants at Cairo, *see id.* ¶ 15. As of August 31, 2022, Cairo has a backlog of 624 immediate relative, 1,910 family preference, and 31 employment-based immigrant visas *See* Austin Decl., Attach. 1, at 4. All cases scheduled at Cairo have an earlier AV progress stage date than Plaintiffs Temsah and Elassal, *see* Miles Decl. ¶ 16, who are numbers 206 and 565, respectively, out of 972 in the DV queue for Cairo, *see id.* Attach. 1.

### 5.   U.S. Embassy in Tirana

Plaintiff Sokol Preka, case number 2022EU00022239 is assigned to the U.S. Embassy in Tirana ("Tirana"). *See* Miles Decl. ¶ 18. As of September 5, 2022, the KCC has scheduled for interviews 1,014 FY2022 DV cases associated with 2,120 prospective applicants at Tirana, *see id.* ¶ 17. As of August 31, 2022, Ankara has a backlog of 146 immediate relative and 46 family preference immigrant visas. *See* Austin Decl., Attach. 1, at 5. All cases scheduled at Tirana have an earlier AV progress stage date than Plaintiff Preka, *see* Miles Decl. ¶ 18, who is number 121 out of 260 in the DV queue for Tirana, *see id.* Attach. 1.

### 6.   U.S. Embassy in Warsaw

Plaintiffs Marcin Malek, case number 20022EU00014754, Ilya Kondratyev, case number 2022EU00016481, Svetlana Nemkova, case number 2022EU00016868, Dmitriy Kuvaev, case number 2022EU00019574, and Piotr Rauski, case number 2022EU00020439, are assigned to the U.S. Embassy in Warsaw ("Warsaw"). *See* Miles Decl. ¶ 20. As of September 5, 2022, the KCC has scheduled for interviews 1,514 FY2022 DV cases associated with 3,546 prospective applicants

at Warsaw, *see id.* ¶ 19. As of August 31, 2022, Warsaw has a backlog of 1,006 immediate relative and 1 family preference immigrant visas. *See* Austin Decl., Attach. 1, at 6. All cases scheduled at Warsaw have an earlier AV progress stage date than Plaintiffs Malek, Kondratyev, Nemkova, Kuvaev, and Rauski, *see* Miles Decl. ¶ 20, who are numbers 169 (Malek), 316 (Kondratyev), 357 (Nemkova), 580 (Kuvaev), and 634 (Rauski) out of 968 in the DV queue for Warsaw, *see id.* Attach. 1.

## LEGAL STANDARD

### A. Motions for a Preliminary Injunction.

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). An injunction should be entered only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate: (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20. The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019). Preliminary injunctive relief "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "[W]hen a plaintiff has not shown a likelihood of success on the merits, [courts] need not consider the other factors" required for a preliminary injunction. *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

**B.  Motions for Summary Judgment.**

Summary judgment under Federal Rule of Civil Procedure ("Rule") 56 is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is consistent with the standard of review under the Administrative Procedure Act ("APA"). *See Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). Due to the limited role the Court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 do not apply. *See Visinscaia v. Beers*, 4 F. Supp. 3d 126, 130 (D.D.C. 2013); *see also* Comment to LCvR 7(h). Rather, the Court should enter summary judgment for the agency unless the agency violated the APA by taking an action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Deppenbrook v. PBGC*, 778 F.3d 166, 171 (D.C. Cir. 2015). Whether the agency complied with the governing APA standard is entirely a question of law. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

## ARGUMENT

**A.  Plaintiffs have not Demonstrated a Likelihood of Success on the Merits of their Claims, and their Motion for Summary Judgment should be Denied.**

As explained in Defendants' motion to dismiss, Plaintiffs fail to demonstrate a likelihood of success on their claims because they fail to state a claim upon which relief may be granted. *See* Defs.' Mem.[4] Indeed, at least one other court has already rejected similar claims by Plaintiffs, denying a motion for emergency relief because Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims. *See United African Org. v. Biden*, No. 1:22-cv-02599, 2022

---

[4]     To facilitate the Court's resolution of Plaintiffs' motion, Defendants repeat certain arguments already before the Court in Defendants' memorandum in support of their motion to dismiss.

WL 3212370, at *12 (N.D. Ill. Aug. 9, 2022) ("Because the Plaintiffs have fallen short of showing a likelihood of success on the merits, there is no need to consider the remaining preliminary-injunction factors."). Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss the entire case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915 (D.C. Cir. 2003); *see also Munaf*, 553 U.S. at 692 (finding it appropriate to "terminate the litigation" at the preliminary injunction stage if the "Government is entitled to judgment as a matter of law"). Nonetheless, if the Court considers the arguments advanced in Plaintiffs' motion further, they fail.

Put simply, Plaintiffs demand that this Court rewrite portions of the INA. Pls.' Mem. at 29. In doing so, Plaintiffs demand that the Court supplant the discretionary authority granted to the Secretary of State ("Secretary") to administer and enforce the INA and to administer the Foreign Service by mandating that the Department marshal all of its consular resources for the adjudication of DV cases before providing any other consular service. The law requires the opposite. "[I]n matters of immigration policy, where deference to the political branches is high, we require clearer legislative direction . . . before adopting a reading of the statute that effects the type of sweeping and monumental change in immigration policy that the Plaintiffs' reading of the statute would cause." *Feng Wang v. Blinken*, 3 F.4th 479, 483 (D.C. Cir. 2021) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context")). The Court should decline to implement Plaintiffs' sweeping change to the INA because their demands rely not upon clear direction from Congress, but upon a misreading of various provisions to achieve a self-serving outcome.

*First*, Congress did not create a procedural right for the DV selectees or a mandatory nondiscretionary duty that the Department must schedule each DV selectee for an interview to

make a visa application before a consular officer. As Defendants previously explained, "Plaintiffs disregard the text and structure of the INA in reaching their conclusions" that Section 1202(b) creates a procedural right and a mandatory nondiscretionary duty. Defs.' Mem. at 41. Section 1202(b) states, "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). To reach Plaintiffs' proposed conclusion, the Court must find that Congress intended that sentence, which appears at the end of a 194-word subsection titled, "Other Documentary Evidence for Immigrant Visa," to mean that the Department must schedule all DV selectees who initiate a visa case for an interview. However, the title and text of the statute indicates that Congress had no such intent. As another court remarked:

> read in context, the sentence appears to concern *who* reviews visa applications rather than whether all such applications must be reviewed (much less be reviewed by a certain time). After all, Section 1202(b) addresses the documentary evidence required to obtain a visa and authorizes consular officers to excuse the documentary requirements in certain circumstances. The final sentence thus appears to require that all visa applications that are reviewed must be reviewed by a consular officer rather than some other person[.]

*Zarei v. Blinken*, No. 1:21-cv-02102-CJN, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021) (citing 8 U.S.C. § 1104(a) (internal citations omitted) (emphasis in original)); *see Preston v. Kentucky Consular Ctr.*, No. 6:22-cv-0015, 2022 WL 3593052, at *14 (E.D. Ky. Aug. 22, 2022) ("And the final sentence of the subsection asserts that every application reviewed must be done by a consular officer, rather than some other person."). Moreover, the title of the section further demonstrates that Congress did not intend to give the sentence the meaning Plaintiffs ascribe to it. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section [are] 'tools available for the resolution of a doubt' about the meaning of a statute.") (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947)). Thus, Congress did not require the Department to schedule every DV selectee who initiates a visa case for an interview before a consular officer.

*Second*, Congress did not require the Department to issue all available visa numbers for the DV program. As Defendants previously explained, "[n]othing in the INA mandates the Department to process a minimum number of diversity visa cases." Defs.' Mem. at 42. This Court and other courts in this district have repeatedly held that Congress did not require the Department to use all available DV numbers. *See Rai*, 567 F. Supp. 3d at 195 ("To be clear, there is no statutory requirement that every available diversity visa be issued each year."); *Gomez v. Trump*, 485 F. Supp. 3d 145, 196 (D.D.C. 2020) (same). Thus, Congress did not require that the Department use all visa numbers available for the DV program.

*Third*, Congress did not impose a duty on the Department to adjudicate all DV cases by the close of the fiscal year. As Defendants previously explained, Defendants disagree with Plaintiffs' allegation, "that… 8 U.S.C. § 1154(a)(1)(I)(ii)(II), evinces a timeline." Defs.' Mem. at 50. In 8 U.S.C. § 1154(a)(1)(I)(ii)(II), Congress set the eligibility for a DV selectee—it did not impose an obligation on the Department. *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II); *Shahi*, 33 F.4th at 929 ("[8 U.S.C. § 1154(a)(1)(I)(ii)(II)] does not impose any duty on the State Department. Instead, it specifies the consequence of delay: the applicant's eligibility for a visa expires."); *Gomez*, 485 F. Supp. 3d at 196 ("Defendants correctly note that [8 U.S.C. § 1154(a)(1)(I)(ii)(II)] does not expressly require the State Department to conclude processing diversity visas by the close of the fiscal year."). Thus, Congress did not impose a duty on the Department to adjudicate all DV cases by the close of the fiscal year.

*Fourth*, selection for the DV program only allows a selectee the opportunity to apply for a DV—not an enforceable statutory right to make a visa application before a consular officer. As discussed above, Congress did not require the Department to schedule every DV selectee who initiates a visa case for an interview before a consular officer. *See supra*; *Zarei*, 2021 WL 9146060,

at *1 ("Plaintiff has not shown that Defendants have a non-discretionary duty to adjudicate his visa application before September 30, 2021."); *Pushkar*, 2021 WL 4318116, at *10 ("Plaintiff cites no authority supporting her contention that Defendants have a non-discretionary, mandatory duty to schedule *her* [] interview within a particular timeframe to allow her visa to be fully processed by the fiscal year deadline.") (emphasis in original). Moreover, the availability of an appointment depends upon the consular resources available to a U.S. Embassy or Consulate General (hereinafter, "posts") and the competing demands on the post. *See Nishihata v. Blinken*, No. 1:21-cv-2173-CKK, 2021 WL 4476750, at *1 (D.D.C. Sept. 30, 2021) ("'And the availability of interview appointments may depend on the available resources and competing demands of consulates in an applicant's country of residence.'") (quoting *Gjoci v. Dep't of State*, No. 1:21-cv-0294-RCL, 2021 WL 3912143, at *2 (D.D.C. Sept. 1, 2021)). Thus, a selectee's opportunity to apply for a DV does not include an enforceable right to appear at an interview before a consular officer. Accordingly, Plaintiffs' policy and unlawful withholding challenges fail.

Defendants do not claim that Congress left the Department unfettered authority to administer the DV program. Rather, the Court's review of the Department's actions here must be through the lens of reasonableness. *See* 5 U.S.C. § 706(1). Foremost, the Department's priority is to ensure the protection and safety of U.S. citizens abroad, and, thus, the Department must be able to direct all available consular resources towards that priority without judicial intervention. Indeed, despite Plaintiffs' claims to the contrary, Congress has granted the Secretary and each Chief of Mission discretion to make decisions about the allocation of consular services. *See* 8 U.S.C. § 1104(a); 22 U.S.C. §§ 2561a(a)(1), 3927; *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) ("Congress has given [the Department] wide discretion in the area of immigration processing."); *see also Preston*, 2022 WL 3593052, at *14 ("[T]he form, manner, and timeframe in which Defendants schedule interviews and process applications to lie firmly within the

11

discretion of the Department."). These are decisions that courts recognize should be "entitled to substantial deference," *De Avila v. Civiletti*, 643 F.2d 471, 475 (7th Cir. 1981) ("It is important to note that the interpretation of the State Department, the agency statutorily entrusted with administration of the Immigration and Nationality Act, 8 U.S.C. § 1104, is entitled to substantial deference."), because they require "balancing complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications," *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

Moreover, the statutes Plaintiffs cite throughout their complaint apply equally to all noncitizens seeking an immigrant visa, not just those seeking a DV. 8 U.S.C. §§ 1202(b), 1151, 1153. Yet Plaintiffs' misinterpretation of the INA skews these broad statutory provisions as favoring one category of immigrant visas over another. The Court need only look to Congress's comments when it created the DV program to determine that Congress had no such intent. *Compare* H. Rept. 101-723 pt. 1 (1990) at 38 ("The Committee is convinced that family reunification should remain the cornerstone of U.S. immigration policy."), *with* H. Rept. 101-723 pt. 1 (1990) at 41 ("[T]he Committee is convinced that immigration can and should be incorporated into an overall strategy that promotes the creation of the type of workforce needed in an increasingly competitive global economy."), *with* H. Rept. 101-723 pt. 1 (1990) at 50 ("These programs reflected Congress' desire to promote diversity in our current immigration system."). The Department recognizes the role of the DV program in the broader immigration scheme and "[i]t is the Department's policy to use as many of the 55,000 diversity visas available each fiscal year as possible." ECF No. 11-4., Decl. of Sara Craig, Attach. J. ¶ 6 (May 3, 2022). Nevertheless, the Department must prioritize the safety and protection of U.S. citizens and balance the remaining demands for consular services consistent with congressional intent for family-based immigration,

with foreign policy goals, and with other visa categories. The Department's exercise of its discretion has been measured and appropriate, resulting in the Department scheduling more DV applicants than there are visa numbers available. Miles Decl. ¶ 5; *Nat'l Cong. of Hisp. Am. Citizens v. Marshall*, 626 F.2d 882, 889 (D.C. Cir. 1979) ("Though other relevant criteria could be imagined, and though even given the Secretary's criteria a different set of priorities could be developed, it is not the function of a reviewing court to substitute its judgment for that of the Secretary, where the Secretary has reasonably exercised his discretion."). Thus, there is no "transparent violation [ ] of a clear duty to act," *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000), and Plaintiffs' unreasonable delay claim fails.

### 1. Fifty-nine Plaintiffs' claims are moot.

Fifty-nine Plaintiffs have no likelihood of success on the merits because their claims are moot. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 225, 232 (D.D.C. 2021) (Mehta, J.). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted). Here, fifty-nine of the seventy-one Plaintiffs have either had their visa application adjudicated or have been scheduled for a visa interview. *See* ECF No. 16-1, Attach. 1; Miles Decl. ¶ 8. Because these 59 Plaintiffs have received either an adjudication or an interview appointment, they do not present a live claim. *See Lujan*, 504 U.S. at 560–61 (standing requires that the "injury will be redressed by a favorable decision"); *see also Filazapovich*, 560 F. Supp. 3d at 225, 232 (dismissing certain Plaintiffs' claims as moot when a consular officer adjudicated their visa applications). As a result of the adjudications and interview appointments, Plaintiffs only move for a preliminary

13

injunction and summary judgment for 13 Plaintiffs (one who has since been scheduled for an interview, *see* footnote 1). *See* Pls.' Mem. at 2. The 59 other Plaintiffs have no likelihood of success on the merits because their claims are moot and because they have not moved for relief.

### 2.  The Department does not have a mandatory non-discretionary duty to adjudicate Plaintiffs' visa cases within a time certain.

Plaintiffs claim, "Congress has been clear on Defendants' duty to adjudicate visas: 'All immigrant visa applications shall be reviewed and adjudicated by a consular officer.'" Pls.' Mem. at 16 (quoting 8 U.S.C. § 1202(b)). Plaintiffs' argument is unpersuasive.

A court is empowered to redress agency action "'unlawfully withheld' only where the law makes 'a specific, unequivocal command,' and the requirement is for a 'precise, definite act about which an official ha[s] no discretion whatever.'" *Skalka*, 246 F. Supp. 3d at 152 (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004)). "If the agency does have a clear duty to act, and Congress has not prescribed a deadline for the action, the question becomes whether the agency's delay is unreasonable." *Id.* (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) ("[T]he distinction between agency action 'unlawfully withheld' and 'unreasonably delayed' turns on whether Congress imposed a date-certain deadline on agency action.").

*First*, Congress has not mandated that the Department shall adjudicate all DV cases. The Supreme Court has been clear:  noncitizens have no right to an immigrant visa. *See Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). And courts have held that a DV selectee is not guaranteed a visa—only the opportunity to submit a DS-260 (Online Immigrant Visa and Alien Registration Application). *See*, *e.g.*, *Gorgadze v. Blinken*, No. 21-2421-JDB, 2021 WL 4462659, at *1 (D.D.C. Sept. 29, 2021).

Moreover, Plaintiffs' unlawful withholding claim is predicated on a misplaced reliance on

8 U.S.C. §§ 1202(b) and 1154(a)(1)(I)(ii)(II). First, Plaintiffs misinterpret a single sentence in Section 1202(b)—"All immigrant visa applications shall be reviewed and adjudicated by a consular officer"—at the end of a 194-word subsection addressing "Other documentary evidence for immigrant visa"—and transform it into a statutory command that the Secretary shall forward every DS-260 form to a consular officer and require an adjudication of the visa application. 8 U.S.C. § 1202(b).[5] As another court in this district remarked, "[i]f this sentence did impose the duty suggested by Plaintiffs, it would truly be the proverbial elephant in a mousehole." *Zarei,* 2021 WL 9146060 at \*1 (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)).

Indeed, Plaintiffs disregard the text and structure of the INA in support of their claim. *See United States v. Wilson*, 29 F.3d 347, 352 (D.C. Cir. 2002) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent."). A DS-260 is a form completed before the interview. A visa application is made before a consular officer at the time of interview. Thus, a visa application does not exist until a visa interview occurs. 22 C.F.R. § 40.1(l)(2) (defining to "[m]ake or file an application for a visa"); *see* 8 U.S.C. § 1202(a) (granting the Secretary discretionary authority on the form and manner for making a visa application). Section 1202(b) addresses the required supporting documents that comprise a visa application when the consular officer is presented with the DS-260. 8 U.S.C. § 1202(b); *see* 8 U.S.C. § 1202(a). Thus, Congress's mandate—that "a visa application shall be reviewed and adjudicated by a consular officer"—is intended to direct who must review a completed visa application (a consular

---

[5]     Defendants recognize that this Court has reached a different conclusion that Section 1202(b) creates a nondiscretionary duty. *See*; *Gomez v. Trump*, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020); *see Rai*, 567 F. Supp. 3d at 195 (citation omitted). Defendants respectfully disagree with the Court's prior conclusion. Moreover, even if Section 1202(b) created such a duty, Plaintiffs fail to demonstrate that Congress mandated that the duty must occur within a time certain. *See infra*, pp. 16-17, 26 (discussing Section 1154(a)(1)(I)(ii)(II)).

officer) after it is made. *See* 8 U.S.C. § 1201 (describing a consular officer's duties related to the issuance of a visa after an application has been made); *id.* § 1202 (describing a visa application, which includes a DS-260 and required supporting documents).

Nothing in the INA mandates the Department to process a minimum number of DV cases, much less that the Department process the visa cases of all selectees who submit a DS-260. In fact, the Department routinely selects far more DV entrants than there are available visas. *See* 8 U.S.C. §§ 1151(a)(3), (e); *see also Gomez*, 485 F. Supp. 3d at 196 ("To be clear, there is no statutory requirement that every available diversity visa be issued each year."). Instead, Congress granted the Secretary and Chiefs of Mission significant latitude to manage consular services, including DV case processing. *See* 8 U.S.C. § 1104; 22 U.S.C. §§ 2651a, 3927; *see also De Los Santos v. INS*, 690 F.2d 56, 60 (2d Cir. 1982) ("It is not the province of the courts to insist that INS's interpretations of the Act result in the perfect immigration scheme, or even that they be the best interpretations possible. Rather INS is given a fair amount of latitude to exercise its judgment as to what interpretations will best effectuate the goals of the Act.") (citing *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153 (1946)); *Nazareno v. Att'y Gen.*, 512 F.2d 936, 940 (1975)); *De Avilia*, 643 F.2d at 475 ("To that end, it is important to note that the interpretation of the State Department, the agency statutorily entrusted with administration of the Immigration and Nationality Act, 8 U.S.C. § 1104, is entitled to substantial deference, and should be followed 'unless there are compelling indications that it is wrong.'") (citing *Quern v. Mandley*, 436 U.S. 725, 738 (1978)) (quoting *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421 (1973) (accord *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381 (1969)). Clearly, Congress did not intend to raise that single phrase—"All immigrant visa applications shall be reviewed and adjudicated by a consular officer"—to the ultimate prescription on how the Department must

perform immigrant visa processing. *See Nat'l Cong. of Hisp. Am. Citizens*, 626 F.2d at 889.

*Second*, Plaintiffs misstate that Section 1154(a)(1)(I)(ii)(II) imposes a time deadline on the Department to adjudicate DV cases. As the Seventh Circuit recently held:

> Plaintiffs want us to treat § 1154(a)(1)(I)(ii)(II) as a deadline for administrative action and to hold that the State Department still owes them a duty to adjudicate their visa applications. Their problem is that this statute . . . does not set a time limit for administrative action. Indeed, it does not impose any duty on the State Department. Instead it specifies the consequence of delay: the applicant's eligibility for a visa expires.

*Shahi*, 33 F.4th at, 929. Indeed, other courts in this district have recognized that the Department has no obligation to schedule a DV selectee for an appointment within a time certain. *See Zarei*, 2021 WL 9146060, at *1 ("Plaintiff has not shown that Defendants have a non-discretionary duty to adjudicate his visa application before September 30, 2021."); *Pushkar*, 2021 WL 4318116, at *10 ("Plaintiff cites no authority supporting her contention that Defendants have a non-discretionary, mandatory duty to schedule *her* consular interview within a particular timeframe to allow her visa to be fully processed by the fiscal year deadline.") (emphasis in original).

Therefore, Plaintiffs' motion for summary judgment on their unlawful withholding claim fails and, necessarily, they cannot show a likelihood of success on the merits as required for a preliminary injunction.

### 3. Plaintiffs' unreasonable delay claim fails to state a claim because the *TRAC* factors favor Defendants.

Plaintiffs challenge the (1) Secretary's discretionary authority to administer the INA and the Foreign Service and (2) Chief of Mission's discretionary authority to operate an overseas mission and to balance the demands of consular services, including visa services. This challenge invites the Court to second-guess the decision-making of the Cabinet Official charged with the U.S. foreign policy and of the individual entrusted by the Executive to head a U.S. diplomatic mission abroad. The Court should decline this invitation.

17

Unquestionably, the Secretary has broad discretionary authority to allocate consular services and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of the Department of State," as well as broad powers and duties with respect to the general administration and enforcement of the INA, *see* 8 U.S.C. §§ 1104, 1202(a); 22 U.S.C. § 2651a. Likewise, a Chief of Mission has broad authority to oversee U.S. government activities, including consular services. 22 U.S.C. § 3927. Additionally, there is no nondiscretionary duty for the Secretary, or a Chief of Mission, to prioritize scarce consular resources to schedule and adjudicate Plaintiffs' visa cases ahead of providing American Citizen Services or adjudicating other categories of immigrant and nonimmigrant visa applicants. *See Pushkar*, 2021 WL 4318116, at *10.

Plaintiffs have only received an opportunity to seek an immigrant visa by their selection in the FY2022 DV program—an opportunity that is shared amongst the other 118,513 selectees and their derivates. Moreover, this opportunity varies due to several factors: (1) the applicant's randomly assigned regional rank order; (2) the conditions in the applicant's country of residence; (3) the resources available to the Department to provide consular services worldwide; (4) the consular resources available in the applicant's country of residence; and (5) the timing of when the applicant submitted their DS-260 and KCC completed review of their case. Important here, the conditions in the applicant's country of residence dictates the availability of consular resources that the Department will allocate first to its' primary mission—the protection and safety of U.S. citizens abroad. Indeed, Plaintiffs cannot point to an INA provision that states that they have a statutory right or even a superior claim to an interview appointment to make a visa application over: the family member of a U.S. citizen or lawful permanent resident; the fiancé(e) of a U.S. citizen; over a lawful permanent resident seeking to return to the United States; a noncitizen

18

seeking an employment-based immigrant visa; another DV selectee; or another category of visa that the Secretary or a Chief of Mission determines is a higher priority based on unique fact-specific circumstances. Indeed, only one Plaintiff's regional rank order was even current before April 1, 2022. *See Gjoci*, 2021 WL 3912143, at *13 ("[A]pplicants with higher visa rank numbers already faced greater odds of having their application adjudicated by the statutory deadline, especially during the pandemic."). Thus, the Court should decline to direct the Secretary and the Chiefs of Mission to place Plaintiffs in a position of preeminence and override the discretionary decisions of the Secretary and each Chief of Mission—the officials best positioned to allocate the Department's scarce resources to meet the mission and priorities of the Executive. *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our [non-citizen] visitors has been committed to the political branches of the Federal Government."); *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978). Accordingly, Plaintiffs' unreasonable delay claim fails to state a claim upon which relief may be granted and this Court should deny their motion for a preliminary injunction.

Even if the Court disagrees and considers this claim further, it still fails because the *TRAC* factors favor Defendants. In evaluating the reasonableness of an agency delay, courts in the D.C. Circuit consider six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79–80 (D.C. Cir. 1984)). The D.C. Circuit has cautioned that the reasonableness of an agency delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Instead, a court must take into account "the importance of 'competing priorities.'" *Id.* (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (1991)).

Additionally, a court must consider that Plaintiffs' unreasonable delay claims are based on individual circumstances. Determining the point at which a delay becomes unreasonable "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances" so court have "decline[d] to establish a universal point at which [it] will always be considered unreasonable." *Diop v. ICE*, 656 F.3d 221, 233 (3rd Cir. 2011); *see Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1215 (11th Cir. 2016) ("'[R]easonableness, by its very nature is a fact dependent inquiry requiring an assessment of all the circumstances of any given case.' A bright-line approach strips away the essence of a reasonableness standard.").

   **i.**   ***TRAC* Factors 1 and 2**

These factors ask whether the length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress, *People's Mojahedin*, 680 F.3d at 836–37, and weigh in Defendants' favor.

"Whether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be

unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021) (quoting *Mashpee Wampanoag*, 336 F.3d at 1102).

Defendants agree that they must make a good faith effort to adjudicate Plaintiffs' visa cases. What constitutes good faith, however, must be gauged against the availability of the U.S. Embassies' resources and Plaintiffs' individual circumstances, and the fact that there was never a guarantee that the Department would schedule Plaintiffs for an appointment. Here, Defendants have demonstrated good faith. In Warsaw, where five of the remaining Plaintiffs are assigned, demand for consular services increased as a result of limitations imposed by the Russian government to the size and composition of U.S. Mission to Russia. ECF No. 11-4, Sara Craig Decl. ¶ 35. These increased consular demands in Warsaw were intensified by fears of a Russian invasion of Ukraine and skyrocketed after Russia invaded Ukraine in February. *Id.* The Visa Office directed Abu Dhabi, where two of the remaining Plaintiffs are assigned, to prioritize immigrant visas for healthcare workers to assist with the COVID-19 pandemic inside the U.S., and Abu Dhabi has supported consular efforts related to Afghanistan. McInerney Decl. ¶¶ 23, 26. The Department has scheduled 34,054 FY2022 DV cases (associated with a total of 70,872 selectee principal applicants and their derivative applicants) for interview appointments to make a visa application worldwide. Miles. Decl. ¶ 5. With respect to the designated consular posts for the remaining 12 Plaintiffs, through September 5, 2022: Abu Dhabi has scheduled interviews for 334 FY2022 DV cases, associated with 728 principal applicants and their derivatives; Almaty has scheduled interviews for 545 FY2022 DV cases, associated with 1,487 principal applicants and their derivatives; Ankara has scheduled interviews for 1,284 FY2022 DV cases, associated with 2,469 principal applicants and their derivatives; Cairo has scheduled interviews for 705 FY2022 DV cases, associated with

1,779 principal applicants and their derivatives; Tirana has scheduled interviews for 1,014 FY2022 DV cases, associated with 2,120 principal applicants and their derivatives; and Warsaw has scheduled interviews for 1,514 FY2022 DV cases, associated with 3,546 principal applicants and their derivatives. *See* Miles Decl. ¶¶ 9, 11, 13, 15, 17, 19; *see also* Decl. of Brenda Grewe (Sept. 14, 2022) (attached hereto as Ex. D). Accordingly, Plaintiffs cannot plausibly allege that the Department's decisions on the allocation of consular services resulted in a "transparent violation [ ] of a clear duty to act[,]" *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000), or a delay "so egregious as to warrant mandamus," *In re Core Commc'ns, Inc.*, 531 F.3d at 855.

Plaintiffs argue that, "[w]hile Defendants continued to assert that cases were processed in order of case number and the date cases move to AV status, ECF No. 15-1 ¶ 3, the processing of Plaintiffs' cases makes clear that cases have not been processed in order, even at the same consulates." Pls.' Mem. at 18–19. Plaintiffs are incorrect. Defendants have acted lawfully, using a scheduling process in place since the fiscal year 2017 DV program year. Decl. of Brenda Grewe (Aug. 15, 2022) ¶ 3 (attached hereto as Ex. E). As Defendants explained, appointments are made based on "the full case number (*i.e.* regional rank order) and the date cases moved into AV status [*i.e.* when the Visa Office allocates a visa to the selectee and, if any, the selectee's derivative beneficiaries]." ECF No. 15-1, ¶ 3. And, the Department has complied with that process. Miles Decl. ¶ 10.

Moreover, Congress granted the Secretary discretion to implement a process. *See* 8 U.S.C. § 1153(e)(2) (directing the order of consideration be "in a random order as established by the Secretary of State."). The purpose of the order of consideration is for the Department to maintain a centralized control of visa issuance to comply with the numerical limitations set by Congress. *See* 8 U.S.C. §§ 1151–53. 22 C.F.R. § 42.51(a). Thus, although the order of

consideration will be in regional rank order, the Department may consider other factors. *See FTC v. Tarriff*, 584 F.3d 1088, 1090–91 (D.C. Cir. 2009) ("We know of no usage, nor do appellants bring forward any, that suggests that the use of 'shall' mandating one act implies a corresponding "shall not" forbidding other acts not inconsistent with the mandated performance."). Before the Department considers a case in regional rank order for visa issuance: (1) a selectee must submit a DS-260; (2) KCC must complete its processing of the selectee's case; (3) KCC must report the case to the Visa Office; and (4) the Visa Office must allocate the case a visa number. Prior to the allocation of a visa number, the selectee is not eligible to apply formally for a visa. 8 U.S.C. §§ 1153(f), 1154(a)(1)(I)(ii)(III); 8 C.F.R. § 42.51(b). The Department, therefore, limits "consideration for visa issuance" to only those cases that are eligible to apply. *See* 8 U.S.C. § 1201(a)(1) (limiting visa issuance to noncitizens, who have made a proper visa application); 22 C.F.R. § 42.33(g) (discussing the further processing necessary for the selectee to formally apply for an immigrant visa); 9 FAM 503.4-3(A) (discussing visa number allocation for visa applicants "who are awaiting only visa numbers to apply formally for a visa"). Accordingly, there may be cases with a higher regional rank order that have completed processing before other cases have completed processing and are ready for scheduling.

As the Department explained in its interim rule publication, noncitizens "whose petitions are selected may then apply for visas in rank order on a first come, first served basis until all of the [55,000] visas for the fiscal year for which the petitions have been selected are issued, or the fiscal year ends, whichever comes first." *Documentation of Immigrants Under the Immigration and Nationality Act, As Amended: Electronic Petition for Diversity Immigrant Status*, 68 Fed. Reg. 49353 (Aug. 18, 2003). Indeed, the Department directs selectees to act promptly after selection. Dep't of State, Instructions for the 2022 Diversity Immigrant Visa Program at 15 ("Selected

applicants who wish to apply for visas must be prepared to act promptly on their cases."). Thus, it is clear that Defendants have made good faith efforts to adjudicate Plaintiffs' visa cases.

With respect to the second *TRAC* factor, there is no statutory "timetable or other indication of the speed" by which a consular interview must be scheduled. *TRAC*, 750 F.2d at 80. "Absent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable" "is entitled to considerable deference." *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983). The Secretary's and a Chief of Mission's decision-making here—the allocation of consular services—"involve[] a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise." *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993); *see Massachusetts v. EPA*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."); *Skalka*, 246 F. Supp. 3d at 153–54 ("Congress has given [the Department] wide discretion in the area of immigration processing.").

While courts in this district have concluded that 8 U.S.C. § 1154(a)(1)(I)(ii)(II) "provides a clear indication of the speed with which it expects the agency to proceed in processing diversity lottery selectees visa applications," *Rai*, 567 F. Supp. 3d at 196; *Pushkar*, 2021 WL 4318116, at *8–9; *Gomez*, 485 F. Supp. 3d at 196, Defendants respectfully disagree.[6] As the Circuit has counseled, "[t]he reasonableness of the delay must be judged in the context of the statute which authorizes the agency's action." *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1158 (D.C. Cir. 1983) (internal quotations omitted). Accordingly, in *Sierra Club v. Thomas*, 828 F.2d

---

[6]    In *Pushkar*, the court agreed with the *Gomez* court, but found that *TRAC* factor 2 "is evenly balanced between the two parties" because "there [was] plainly no statutory obligation requiring *all* visa applications to be processed, much less Plaintiff's particular petition." *Pushkar*, 2021 WL 4318116, at *9 (emphasis in original).

783 (D.C. Cir. 1987), the D.C. Circuit stated, "the presence of deadlines elsewhere in the statute is a factor counseling against judicial intervention" regarding agency action governed by sections that contain no deadlines. *Id.* at 797 n.99 (abrogated by statute. Yet, under the APA's rubric, the Court imposed a new deadline for processing DV cases not found in the INA. *Cf. Cutler v. Hayes*, 818 F.2d 879, 901 n.158 (D.C. Cir. 1987) ("[T]he Supreme Court's stern counsel [in *Heckler v. Day*, 467 U.S. 104 (1984)] against judicial imposition of mandatory deadlines, where legislative history strongly indicates congressional repudiation of them, clearly applies to delay claims under the APA.").

First, unlike 8 U.S.C. § 1154(a)(1)(I)(ii)(II), other sections of the INA contain mandatory deadlines, including for adjudication. *See, e.g.*, 8 U.S.C. §§ 1447(b) (creating a cause of action if USCIS fails to adjudicate a naturalization application within 120 days of the interview), 1189(a)(4)(B)(iv)(I) ("Not later than 180 days after receiving a petition for revocation . . ., the Secretary [of State] shall make a determination as to such revocation."). In Defendants' view, the *Gomez* court erroneously relied on the congressional deadline stated in 8 U.S.C. § 1154(a)(1)(I)(ii)(II) to reach its finding. "'The specificity and relative brevity' of the September 30 [DV] deadline manifests Congress's intent that the [] Department undertake good-faith efforts to ensure that [DVs] are processed and issued before the deadline." *Gomez*, 485 F. Supp. 3d at 196 (quoting *In re People's Mojahedin*, 680 F.3d at 837). However, unlike the DV fiscal year deadline, *People's Mojahedin* addressed 8 U.S.C. § 1189(a)(4)(B)(iv)(I), which gives "the Secretary 180 days to take action on a petition for revocation." 680 F.3d at 837. The existence of these explicit deadlines in the INA "counsel[s] against judicial intervention" to create one for 8 U.S.C. § 1154(a)(1)(I)(ii)(II). *See Shahi*, 33 F.4th 927; *Zarei*, 2021 WL 9146060; *Pushkar*, 2021 WL 4318116.

Second, courts in this Circuit have concluded that other more direct language in the INA is not a timetable or other indication of speed. *See*, *e.g.*, *Yanjia Zeng v. Mayorkas*, No. 21-cv-0446-DLF, 2021 WL 2389433, at *3 n.3 (D.D.C. Apr. 16, 2021) (analyzing 8 U.S.C. § 1571(b) and stating that "[i]t is the sense of Congress that the processing of an immigration benefit should be completed not later than 180 days after the initial filing of the application."); *see Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (concluding that the policy preference for the timing of the adjudication of family-based immigrant visas and fiancé(e) nonimmigrant visas cases was not a "specific timeline").

Third, if Congress intended to direct the Department to process a DV case within a time certain, then Congress would have explicitly stated that requirement. *See FCC v. NextWave Personal Commc'ns, Inc.*, 537 U.S. 293, 302 (2003). Indeed, Congress has clearly shown it knows how to impose a timeline for visa case adjudication in the INA. In the Refugee Crisis in Iraq Act of 2007 and the Afghan Allies Protection Act of 2009, Congress mandated that the Department and Homeland Security "shall improve the efficiency by which applications . . . are processed so that all steps . . . should be completed not later than 9 months." FY 2008 National Defense Authorization Act, Pub. L. No. 110-181, § 1242(c), 122 Stat. 395 (Jan. 28, 2008), as amended (accord Omnibus Appropriations Act, Pub. L. No. 111-8, § 602(b)(4), 123 Stat. 807 (Mar. 11, 2009), as amended). Accordingly, Defendants contend that Congress did not intend to impose a deadline by which the Department must adjudicate a DV case, and, thus, Congress did not impose a timetable for action under Section 1154(a)(1)(I)(ii)(II). *See Shahi*, 33 F.4th at 929 ("[8 U.S.C. § 1154(a)(1)(I)(ii)(II)] does not impose any duty on the State Department. Instead, it specifies the consequence of delay: the applicant's eligibility for a visa expires.").

Ultimately, if Congress wished to make the political decision to require the Department to prioritize DVs over other classes of visas it was free to do so. Absent making that political decision and directing the Executive Branch's immigration authorities, those authorities are free to exercise their discretion consistent with the INA's statutory text. *See, e.g.*, *Biden v. Texas*, 142 S. Ct. 2528, 2540–45 (2022) (concluding a discretionary provision of the INA (option to return non-citizens to contiguous foreign countries) was not made mandatory even though failing to exercise that discretion may have violated another portion of the INA (mandatory detention provisions)). Respectfully, this Court does not have a role in that political process. As such, the first and second *TRAC* factors weigh in Defendants' favor.

### ii.    *TRAC* Factor 4

The fourth factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag*, 336 F.3d at 1100 (noting that, when the fourth *TRAC* factor has weighed in an agency's favor, courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it."), and weighs heavily in Defendants' favor.

Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others who are not parties to the litigation. *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (concluding courts will not compel agency action where result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *see also Mashpee Wampanoag*, 336 F.3d at 1101 ("We agree with the Secretary that the district court erred by disregarding the importance of there being 'competing priorities' for limited resources. The district court offered no legal justification for precluding the Secretary from relying upon her 'first-come' procedure, and we can conjure

none."); *In re Barr Labs.*, 930 F.2d at 76 ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."). Indeed, courts in this district have recognized, "[b]ecause [consular] processing capacity is presently a zero-sum game, granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *See Murway v. Blinken*, No. 21-cv-1618-RJL, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (internal quotations and citations omitted); *see also Tate*, 513 F. Supp. 3d at 150 (finding that the fourth *TRAC* factor "heavily favor[ed] [the Department]'s position" because "an accumulation of such individual cases being pushed by judicial fiat to the front of the [visa processing] line would erode the ability of agencies to determine their priorities.").

Here, Plaintiffs demand that the Court move their visa case to the front of the line, displacing other noncitizens who await the scheduling of an appointment, but who happen not to be litigants in this case. *See* Pls. Am. Compl. at 42 (Prayer for Relief ¶ 3). Yet, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149 (quoting *Sarlak v. Pompeo*, No. 20-cv-0035-BAH, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)); *see also Gorgadze*, 2021 WL 4462659, at *10 ("Even assuming the remaining *TRAC* factors weigh in Plaintiff's favor, factor four's heavy weight against them all but precludes their unreasonable delay claims from succeeding on the merits."); *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiff's claims of unreasonable delay."). Indeed, there are other DV selectees before Plaintiffs in the scheduling order. Miles Decl. ¶¶ 10, 12, 14, 16, 18, 20; *Id.*, Attach. 1.

As such, the fourth *TRAC* factor favors Defendants.

### iii.      *TRAC* Factors 3 and 5

These two "factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay," *Liberty Fund*, 394 F. Supp. 2d at 118—and also weigh in Defendants' favor.

Here, advancing Plaintiffs' visa cases to the front of the queue would simply benefit Plaintiffs to the detriment of other DV applicants and immigrant visa applicants, to include family-based visa immigrant applicants, both who may have experienced the same or worse impacts from a delay. *See, e.g.*, *Pushkar*, 2021 WL 4318116, at *9 ("[I]t is not just [plaintiff's] 'health and welfare' that the Court must consider, but also that of others similarly-situated."); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) ("But the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications.") (citation and internal quotations omitted). As such, the third and fifth *TRAC* factors favor Defendants.

### iv.      *TRAC* Factor 6

The final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.

Here, the Department has scheduled 34,054 FY2022 DV cases, associated with 70,872 principal applicants and their derivatives, for an interview appointment (*see supra* section A.3.i for breakdown of adjudications at each post related to the 12 unscheduled Plaintiffs). Miles Decl. ¶¶ 5; *see Liberty Fund*, 394 F. Supp. 2d at 119–20 (holding "[t]he good faith of the agency in addressing the delay weighs against" a finding of unreasonable delay); *see also* Pls.' Mem. at 24 (arguing that *TRAC* factor 6 was neutral because "Defendants have made great strides in the

processing and adjudications of DV-2022 adjudications"). As such, the sixth *TRAC* factor favors Defendants.

* * *

Therefore, Plaintiffs' motion for summary judgment on their unreasonable delay claim fails and they, necessarily, cannot demonstrate that there is a likelihood of success on the merits on the claim for a preliminary injunction.

**B.     Plaintiffs Cannot Establish a Likelihood of Immediate Irreparable Harm because Plaintiffs are not Guaranteed a Visa or an Interview Appointment to make a Visa Application.**

Regardless of the merits of his or her claims, a plaintiff must show "that irreparable injury is likely in the absence of an injunction." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22). To be considered "irreparable," a plaintiff must show that absent granting the preliminary relief, the injury will be "'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The significance of the alleged harm is also relevant to a court's determination of whether to grant injunctive relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); *E.B. v. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) ("While 'there is some appeal to the proposition that any damage, however slight, which cannot be made whole at a later time, should justify injunctive relief,' the Court cannot ignore that 'some concept of magnitude of injury is implicit in the [preliminary injunction] standards.'") (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)).

Here, Plaintiffs fail to show any irreparable harm that entitles them to emergency relief. As another court in this district remarked about a DV selectee:

> Based on this flawed premise [that selection is a guarantee of a visa], Plaintiff seeks a TRO compelling Defendants to 'schedule' her consular interview and thereafter 'issue' her immigrant visa. Because an injunction will not redress [her] alleged injuries, [plaintiff's] claim that [she] will suffer irreparable harm in the absence of a preliminary injunction is tenuous at best.

*Pushkar*, 2021 WL 4318116, at *11 (internal quotations and citations omitted). Plaintiffs allege similar harm. *Compare* Pls.' Mem. at 27 ("[T]he question is not whether there are enough visas for [Plaintiffs], but rather whether Defendants' continued inaction in processing and adjudicating their visa applications will be allowed to extinguish their dreams of immigrating to the United States."), *with Pushkar*, 2021 WL 4318116, at *11 ("Here, Plaintiff argues that if her 'visa is not issued by September 30, 2021,' she will 'permanently lose her opportunity to immigrate to the United States through the diversity visa program.'") (quoting plaintiff's brief). Thus, the Court should find Plaintiffs' motion has not established a likelihood that they would suffer irreparable harm absent a preliminary injunction.

### C. The Balance of Harms and the Public Interest Weigh against Preliminary Relief because Pushing Plaintiffs' Cases to the Front of the Line would Displace other Noncitizens seeking a Visa and would Impermissibly Interfere with the Department's and U.S. Diplomatic Missions' Authority to Allocate Consular Services.

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. The Court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger*, 456 U.S. at 312).

While the Department is sympathetic to DV program selectees and their eagerness to have interviews scheduled and visa applications adjudicated, there has never been a guarantee that such

selectees would receive a visa, or even an interview appointment. *Gomez*, 485 F. Supp. at 159. Furthermore, because of the unprecedented impact of the COVID-19 pandemic, there currently is an immigrant visa backlog of 384,681cases,[7] which includes all varieties of immigrants, such as the spouses, children, fiancé(e)s and immediate family members of U.S. citizens. As evidenced by the record, the Department is processing DV cases, and this Court should not issue an injunction that would effectively push Plaintiffs' DV cases to the front of the queue, causing further delay to others who are waiting. *See Pushkar*, 2021 WL 4318116, at *12 ("Granting Plaintiff's requested relief would require Defendants to re-order their processing queue, potentially allowing Plaintiff to move ahead of other similar-situated visa applicants—who, in turn, may lose their opportunity to obtain a visa."). Thus, the balance tips in favor of denying a preliminary injunction based on the public interest because other DV selectees who may not have counsel to push them to the front of the queue should not be disadvantaged and, as relevant here, when consulates only function in a limited capacity (based on both U.S. and country-by-country COVID19 guidelines), other matters may take precedence. This Court does not have jurisdiction to compel the Department or a particular U.S. Embassy or Consulate to prioritize certain visa categories over others, or to order the Department or a particular U.S. Embassy or Consulate to divert limited consular resources away from providing services to U.S. citizens or their family members. Doing so would cause further delay for the immigrant visa applicants and families of those already waiting in the queue, put the safety of consulate officials and visa applicants at risk, and effectively cripple the Department's, U.S. Embassies', and U.S. Consulates' ability and discretion to manage its own operations.

---

[7]     Available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last accessed on Sept. 14, 2022)

## CONCLUSION

For the reasons set forth above and discussed in Defendants' motion to dismiss, ECF Nos. 11 and 13, the Court should deny Plaintiffs' motion for a preliminary injunction and summary judgment, ECF No. 19.

DATED: September 14, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation - DCS

WILLIAM C. SILVIS
Assistant Director

JORDAN K. HUMMEL
Trial Attorney

Respectfully submitted,

*s/William C. Bateman III* _____
WILLIAM C. BATEMAN III
Trial Attorney
TN Bar. No. 034139
U.S. Department of Justice, Civil Division
Office of Immigration Litigation - DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
T: (202) 532-4067
F: (202) 305-7000
William.c.bateman@usdoj.gov

*Counsel for Defendants*