UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAUL BOU JABBOUR, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY BLINKEN *et al.*, <br><br> Defendants. | Case No. 22-cv-00451 (APM) |

## MEMORANDUM OPINION AND ORDER

### I.

Plaintiffs are 12 2022 diversity visa selectees.[1]  They ask the court to enter a preliminary injunction requiring Defendants to schedule them for interviews with consular officers before September 30, 2022, the end of the fiscal year.  Pls.' Mot. for a Prelim. Inj. or Summ. J. in the Alternative, ECF No. 19 [hereinafter Pls.' Mot.], Pls.' Mem. in Supp. of Pls.' Mot., ECF No. 19 [hereinafter Pls.' Mem.].  Plaintiffs seeks injunctive relief on two related grounds: the State Department has both unreasonably delayed and unlawfully withheld scheduling their interviews, in violation of 5 U.S.C. § 706(1).  *See* Pls.' Mem. at 7–16.  Because Plaintiffs have not shown a substantial likelihood of success on their claims, their motion is denied.  *See Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011)

---

[1] At the start of this case there were 71 Plaintiffs.  By August 24, 2022, 52 of them had had their diversity visa applications adjudicated.  *See* Notice of Updated Processing and Interview Appointment Scheduling Statistics, ECF No. 16, at 2. When Plaintiffs filed their motion for preliminary injunction, all but 13 had received interviews.  Since that filing, one additional Plaintiff has been scheduled for an interview, leaving 12 Plaintiffs who seek injunctive relief.  *See* Defs.' Opp'n to Pls.' Mot., ECF No. 20, at 1 n.1.

("[W]hen a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining [preliminary injunction] factors.").

## II.

### A.

The court beings with Plaintiffs' unreasonable delay claim. Such a claim is governed by the six so-called *TRAC* factors. *See In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (citing *Telecomms. Research & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 79 (D.C. Cir. 1984)). Those factors are:

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* (citation omitted). "In each case, the central question is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Id.* (citation omitted).

Here, *TRAC* factors one and two are at most neutral when it comes to an individual diversity visa applicant. It is true that this court previously has held that *TRAC* factors one and two favor diversity visa selectees, but that holding was in the context of a complete shut-down in diversity visa processing based on a legal error by the State Department. *See Gomez v. Trump*, 485 F. Supp. 3d 145, 196 (D.D.C. 2020) (observing in the context of *TRAC* factors one and two that "the State Department could [not] effectively extinguish the diversity program for a given year by simply sitting on its hands and letting all pending diversity visa applications time out"); *Filazapovich v.*

2

*Dep't of State*, 560 F. Supp. 3d 203, 236 (D.D.C. 2021) (similarly stating as to *TRAC* factors one and two, "regardless of the Department's competing priorities, it was plainly unreasonable for it to stop processing visas for five months of FY 2021 based on an erroneous interpretation of the law"). The *TRAC* analysis is fact specific. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (stating that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court"). And this case, unlike *Gomez* and *Filzapovich*, involves individual plaintiffs who are not alleging a legal error. An individual selectee is not guaranteed an interview, let alone an interview by the end of the fiscal year. So, *TRAC* factors one and two do not favor Plaintiffs in the same way they did for the plaintiffs in those other cases.

*TRAC* factors three and five favor Plaintiffs. The non-scheduling of an interview is tantamount to denial of a diversity visa. *See* 8 U.S.C. § 1202(e) (stating "each application for an immigrant visa shall be signed by the applicant in the presence of the consular officer"); *Almaqrami v. Pompeo*, 933 F.3d 774, 777 (D.C. Cir. 2019) (Once an applicant for an immigrant visa is before a consular officer, if the applicant "meets the criteria to obtain one, the State Department 'shall' issue him a diversity visa." (quoting 8 U.S.C. § 1153(c))). So, the claimed unreasonable delay here implicates Plaintiffs' "human health and welfare" and substantially prejudices their interests in immigrating to this country. *See Gomez*, 485 F. Supp. 3d at 196.

*TRAC* factor four weighs heavily in favor of Defendants and is, for all intents and purposes, dispositive. Even when all other *TRAC* factors lie in a plaintiff's favor, the D.C. Circuit has refused to grant relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee*, 336 F.3d at 1100 (alterations omitted). That is precisely the relief Plaintiffs seek here. By asking for an immediate interview,

3

Plaintiffs ask to be put ahead of other diversity selectees who similarly are waiting for an interview. *See* Defs.' Opp'n to Pls.' Mot., ECF No. 20, Decl. of Morgan Miles, ECF No. 20-2 [hereinafter Miles Decl.] ¶¶ 9–20. Plaintiffs contend that they are not asking to move to the head of the line because they "have *already* been allocated visa numbers." Pls.' Mem. at 15. That argument is based on the fact that they have been granted "AV status," meaning that they have been allocated visa numbers and their cases have been transitioned from the Kentucky Consular Center to an embassy or consular office. Miles Decl. ¶ 10 (explaining meaning of "AV status"). But the Miles Declaration makes clear that AV status does not mean a selectee has been *granted* a diversity visa pending an interview. Rather, it appears that AV status simply means that a selectee's DS-260 visa application has been accepted and transitioned to an embassy or consulate for an interview. *Id.* Dozens of selectees have an earlier "AV stage date" than these Plaintiffs. *Id.* ¶¶ 9–20. Granting Plaintiffs the relief they seek would move them ahead of others who likewise are awaiting an interview.

Finally, Plaintiffs acknowledge that the sixth *TRAC* is "neutral" because after "an anemic start to the DV-2022 program, Defendants made great strides in the processing and adjudications of DV-2022 applications." Pls.' Mem. at 16. Plaintiffs' concession is sound. As of August 21, 2022, consular officers worldwide had issued 38,042 diversity visas. *See* Notice of Updated Processing and Interview Appointment Scheduling Statistics, ECF No. 16, at 2. Additionally, as of August 22, 2022, the State Department "had scheduled interviews for 33,840 DV cases, associated with 70,443 prospective applicants." *Id.* Thus, if the State Department does not exhaust the diversity visa allotment of 55,000 for fiscal year 2022, it will come very close. That output belies any notion that the State Department has acted in bad faith.

4

Accordingly, the court finds that Plaintiffs have not demonstrated a substantial likelihood of success on their unreasonable delay claim.

B.

Plaintiffs also advance the separate claim that the State Department has unlawfully withheld scheduling their interviews. Pls.' Mem. at 8. But Plaintiffs cite no statute or regulation that requires the State Department to grant an individual diversity visa selectee an interview, or guarantees such interview. Plaintiffs points to 8 U.S.C. § 1202(b), Pls.' Mem. at 8, which this court previously has said imposes "a specific and nondiscretionary obligation to review and adjudicate [] immigrant visa applications." *Filazapovich*, 560 F. Supp. 3d at 235. But the court made that observation in the context of the State Department's complete cessation of processing diversity visa applications. *See id.* at 234–35. The court has never said that the State Department has a duty to process and adjudicate any particular visa application. The program does not work that way. *See Gomez*, 485 F. Supp. 3d at 196 ("To be clear, there is no statutory requirement that every available diversity visa be issued each year."). Thus, having failed to identify "a *discrete* agency action that [the State Department] is *required* to take," Plaintiffs' "unlawfully withheld" claim cannot be sustained. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

IV.

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction, ECF No. 19, is denied.

Dated: September 26, 2022

Amit P. Mehta
United States District Court Judge